Pearson, J.
 

 When a parent makes a parol gift of a slave to his child, it is held, that the effect of the act of 1806 is to make the child a bailee. Such a gift, however, differs essentially from a mere loan;
 
 (Cowan
 
 v.
 
 Tucker,
 
 5 Ire. 78;) for the child accepts it with the expectation that it will be confirmed by the parent, in his life-time, or by his will, or by the law, in case the parent dies intestate. Indeed, the transaction is looked upon by both parties as intended for an advancement; the parent, for special reasons, choosing to retain the title. So, although it is called a
 
 bailment,
 
 the relation is not that of one who hires or lends a slave to his child. In the same way, when a' mortgagor remains in possession, or a purchaser is
 
 *418
 
 let into possession under a contract of sale, the relation is called a
 
 “
 
 tenancy at will,” for the want of some other term, although there is no rent reserved, no services, and no tenure; all of which are necessary to constitute the relation of
 
 “
 
 landlord and tenant.”
 

 If, the parent, after such a gift, sells the slave, or makes a deed of gift to a third person, that certainly amounts to a revocation, and puts an end to the bailment; so the relation of bailor and bailee does not exist as between such third person aud the child; their claims are conflicting and adversary, and, in the absence of any arrangement between them, the possession of the child for more than three years will bar the right of such third person. "We can see no reason why this principle does not apply to the case of a gift by will. The rights of the legatee are inconsistent with any right whatever in the child; the parol gift is revoked, and the possession of the child is adverse ; for in no sense of the word can he be called a bailee of the legatee.
 

 In our case, by the will of Boderic' Gotten, the. slaves are given expressly to Anne Ootten. This revoked the parol gift of the testator to his son, B. 0. Gotten, and unless there be some other element in the case to prevent it, the rights of Anne Ootten and B. 0. Ootten were adversary, and his possession was necessarily adverse. It is said this effect is prevented by the fact, that B. C. Ootten, for some reason or other, did not claim the slaves as belonging to him. The reply is, that in 1838, B. 0. Cotten’s wile, with his knowledge, made a parol gift of these slaves and others, to the defendant, who had then lately intermarried .with their daughter; and he has claimed them as belonging, to him from that time up to the present. Now, although if this had been done in the life-time of Boderic Ootten, it might not have terminated the bailment, because it was, in some degree, consistent with the purpose of the original gift, a question which it is not necessary now to decide, yet being done after the title had passed to his legatee, it certainly had the effect of rebutting any inference to be drawn from the fact that B. 0. Ootten had not before set
 
 *419
 
 up claims to tbe slaves; at least it would liave bad that effect if the legatee had been a stranger, and not his mother.
 

 This presents a second consideration. Anne Gotten being the mother of E. 0. Gotten, it is suggested that her permitting the slaves to continue in his possession, amounted to a gift on her part, and created a like relation of bailor and bailee, as had previously existed upon the original gift by her husband. It is unnecessary to complicate the case by entering upon this subject; for suppose that to be so; Anne Gotten died in 1846; in her will certain negroes are given by name to the plaintiff; all the horses mules, &c., are also given to him, and the residuary clause gives him “ the balance of the estate of every description,” and he is appointed the executor. This terminated the bailment between Anne Gotten and the' defendant, which, for the sake of the argument, wTe have supposed to exist. The plaintiff’s right as executor, and as legatee, to these slaves, was inconsistent with the claims of the defendant; there was no arrangement, express or implied, between them. It was the duty of the plaintiff, as the executor of Anne Gotten, to take into his possession all of her estate, and deliver it to the legatees. The fact that he is the legatee does not affect the question. TVe are to suppose that, at the end of two- years, he had collected the estate, and settled it according to law. This brings us down to 1848. The writ issued in 1S53 ; so, there is five years, during which he has a conflicting claim as legatee, with that of the defendant claiming under the original gift made by Eod-pric Gotten in 1815, and seven years, during which his duty as executor required him to take these slaves into his possession. T\re are of opinion that his ladies during that time had the effect of vesting the title in the defendant, by force of the statute of limitations and his adverse possession. This conclusion is-fully sustained by the reasoning, and the decision of this Court in
 
 Simpson
 
 v. Boswell, 5 Ire. R. 49. Indeed, our task has" been simply to deduce a corollary from the two cases
 
 —Cowan
 
 v.
 
 Tucker,
 
 and
 
 Simpson
 
 v.
 
 Boswell, ubi supra.
 

 It is proper to call the attention of the profession to the fact
 
 *420
 
 that, unless the
 
 “
 
 statement of the case” sets out that by agreement a nonsuit is to be entered, if the Court should be against the plaintiff upon the points reviewed, this Court can do no more than order a
 
 venire de novo,
 
 which does not meet the intention, or end the case as if it had come up in a, special verdict, or case agreed.
 

 Peb Cubiam. The judgment rendered is set aside, and a
 
 venire de novo.